IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SL IMPERIAL LP, LLC;<br>SL IMPERIAL GP, LLC<br><br>Plaintiffs,<br><br>V.<br><br>ASHFORD/IMPERIAL ASSOCIATES<br>GP, LLC; TERRANCE J. PALMER;<br>JAMES R. JOHNSON<br><br>Defendants. | CIVIL ACTION NO. 2:23-cv-359 |

## COMPLAINT

Plaintiffs, SL Imperial LP, LLC and SL Imperial GP, LLC, by and through their undersigned counsel, hereby file this Complaint against Ashford/Imperial Associates GP, LLC, Terrance J. Palmer, and James R. Johnson, as follows:

## PARTIES

1. Plaintiff SL Imperial LP, LLC is a limited liability company organized in the state of Delaware.

2. Plaintiff SL Imperial GP, LLC is a limited liability company organized in the state of Delaware.

3. Defendant Ashford/Imperial Associates GP, LLC is a limited liability company organized in the state of Pennsylvania with a business address of 103 Gamma Drive, Suite 130, Pittsburgh, PA.

4. Defendant Terrance J. Palmer is an individual, who upon information and belief, resides in the Commonwealth of Pennsylvania.

5. Defendant James R. Johnson is an individual, who upon information and belief, resides in the Commonwealth of Pennsylvania.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. § 1332(a) on the grounds that the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states.

7. Upon information and belief, the members of Ashford/Imperial Associates, GP, LLC reside in Pennsylvania.

8. None of the plaintiffs' members reside in Pennsylvania.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because defendant Ashford is located within this district, and defendants Terrance J. Palmer and James R. Johnson are both residents of the state of Pennsylvania.

## FACTS COMMON TO ALL CLAIMS

**The Purchase Agreement**

10. On or about October 16, 2019, SL Imperial LP, LLC and SL Imperial GP, LLC (collectively "Buyers") entered into a Purchase Agreement which was amended on or about November 15, 2019 (collectively, the "Purchase Agreement") with Ashford/Imperial Associates GP, LLC, Mr. Palmer, and Mr. Johnson (collectively "Sellers"). A true and accurate copy of the Purchase Agreement is attached hereto as **Exhibit A**.

11. Prior to the execution of the Purchase Agreement, Ashford/Imperial Associates GP, LLC was the owner of the issued and outstanding general partnership interests in Ashford/Imperial Associates, L.P., a Pennsylvania limited partnership (the "Partnership").

12. Prior to the execution of the Purchase Agreement, Mr. Palmer and Mr. Johnson together owned all of the issued and outstanding limited partnership interests in the Partnership.

13. Prior to the execution of the Purchase Agreement, the general partnership interests owned by Ashford and the limited partnership interests owned by Mr. Palmer and Mr. Johnson constituted all of the issued partnership interests in the Partnership.

14. Prior to the execution of the Purchase Agreement, the Partnership was the owner of certain real property located in Allegheny County, consisting of approximately 97 acres, together with nine buildings consisting in the aggregate of approximately 530,280 square feet and all buildings, structure, facilities, improvements and fixtures thereon and all tenements, hereditaments, appurtenances, and rights of way incident and belonging thereto (the "Real Property"). A legal description of the Real Property is set forth in Exhibit F to the Purchase Agreement.

15. Pursuant to the Purchase Agreement, Ashford/Imperial Associates GP, LLC, would sell to SL Imperial GP, LLC all of its right, title, and interest in and to its general partnership interests in the Partnership.

16. Pursuant to the Purchase Agreement, Mr. Johnson and Mr. Palmer would sell to SL Imperial LP, LLC all of their right, title, and interest in and to their limited partnership interests in the Partnership.

17. The purchase price agreed upon in the Purchase Agreement was $53,600,000.00, of which SL Imperial GP, LLC would pay 1% of to Ashford/Imperial Associates GP, LLC; SL Imperial LP, LLC would pay 49.5% of to Mr. Palmer; and SL Imperial LP, LLC would pay 49.5% of to Mr. Johnson.

18. The Closing Date was December 23, 2019.

19. In connection with the Purchase Agreement, though the transfer of the Partnership interests, the Buyers also acquired the Real Property and its improvements.

**Representations in the Purchase Agreement**

20.     Article III of the Purchase Agreement includes representations and warranties made by the Sellers.

21.     Article III, Section 3.06 of the Purchase Agreement states that except for the liabilities listed, "the Partnership[1] has no liabilities, obligations, or commitments of any nature whatsoever, asserted or unasserted, known or unknown, absolute or contingent, accrued or unaccrued, matured or unmatured, or otherwise."

22.     Article III, Section 3.07(a) of the Purchase Agreement states that "Sellers have not received any notice of any violation or alleged violation of any legal requirement affecting the Real Property, including, without limitation, any violation or alleged violation of any local, state or federal environmental, zoning, handicap, health, safety, or fire law, ordinance, code regulation, rule or order, and specifically including, without limitation, variances or special permits affecting the Real Property, and has no knowledge that such a violation exists, and Sellers shall give to Buyers prompt notice of the institution of and cure or settle, at their sole expense, any such matter or proceeding prior to Closing, including without limitation, any Environmental Law."

23.     Article III, Section 3.07(c) of the Purchase Agreement states that "There are no Contracts, agreements or understandings, oral or written, including any lease or license agreements, that Sellers or the Partnership have with any person, entity or governmental authority affecting the Real Property or which could give rise to claims affecting the Real Property, other than the Leases and those identified on Schedule 3.07(c)."

---

[1] All capitalized language in quotation marks is defined as it is within the Purchase Agreement.

24. Article III, Section 3.07(i) of the Purchase Agreement states that "Neither Sellers nor the Partnership have filed and Sellers are not aware of any application, submission or request for any zoning, site plan approval, governmental approvals, variance, waiver, license, sewer permit, building permit or other approval from any governmental authority in connection with the development and/or use of the Real Property which has been granted, denied or is now pending."

25. Article III, Section 3.07(m) of the Purchase Agreement states that "To the best of Sellers' knowledge and belief, (i) all information regarding the Real Property furnished by Sellers to Buyers is true and correct in all material respects, (ii) Sellers have not failed to furnish to Buyers any Contract relating to the Real Property or any amendments thereto which will be binding on Buyers or the Partnership from and after the Closing, or any information which would be material to the ownership or operation by Buyers of the Real Property as it exists presently or on the Closing Date, and (iii) Sellers have disclosed to Buyers in writing all material adverse information of which Sellers are aware, if any, concerning the physical condition of the Real Property."

26. Article III, Section 3.09(a) of the Purchase Agreement states that "the Partnership has complied, and is now complying with all Laws applicable to it or its business, properties or assets."

27. Article III, Section 3.09(b) of the Purchase Agreement states that "All Permits required for the Partnership to conduct its business have been obtained by it and are valid and in full force and effect…"

28. In addition to the representations and warranties in Article III of the Purchase Agreement, the Sellers agreed to "indemnify and defend each Buyer and such Buyer's affiliates (including the Partnership) and their respective Representatives (collectively, the "Buyer Indemnitees") against, and shall hold each of them harmless from and against, and shall pay and reimburse each of them for,

any and all Losses incurred or sustained by, or imposed upon, the Buyer Indemnitees based upon, arising out of, with respect to or by reason of… any inaccuracy in or breach of any representations or warranties of a Seller contained in this Agreement…" ("Indemnification Clause").

### November 9, 2010 Decision of the Board of Supervisors

29.     Prior to the Buyers' acquisition of the general and limited interests in the Partnership, on September 28, 2010, defendants Ashford/Imperial Associates, L.P., or their representative, went before the Board of Supervisors of the Township of North Fayette ("Board of Supervisors") with an application for Revised Tentative Approval of a Planned Non-Residential Development on the Real Property (the "Application").

30.     On November 9, 2010, the Board of Supervisors rendered a decision (the "2010 Decision") regarding the Application.

31.     The 2010 Decision granted a number of modification waivers for the Real Property.

32.     In addition, the 2010 Decision granted tentative approval for the Application, subject to eighteen conditions, including that:

   a. The Partnership must submit applications for final approval for all phases of development of the Real Property. (A)
   b. The Partnership must have a developer's agreement in place for a phase before receiving final approval from the Board of Supervisors. (B)
   c. The Partnership must submit geo-technical reports and stormwater reports prior to final approval of any phase by the Board of Supervisors. (E)
   d. The Partnership must enter into an additional storm water agreement. (F)

    e. The Partnership must receive all pertinent government permits. (I)

    f. All streets within the Real Property would be constructed to the specifications of the town's Subdivision and Land Development Ordinance and Township Construction Standards for public streets even though the town has no interest in such streets becoming public. (J)

    g. All stormwater management facilities including stormwater ponds, outfall structures and open drainage swales would be the responsibility of the Partnership. (K)

    h. If no application for final approval was submitted within one year of the date of the 2010 Decision, the tentative approval would be voided. (M)

33. The Sellers never disclosed the existence of the 2010 Decision to the Buyers.

34. The Buyers had no knowledge of the 2010 Decision at the time that the Purchase Agreement was executed.

35. The Sellers failed to materially comply with the 2010 Decision and the Ordinances of the Township of North Fayette ("Ordinances") in that:

    a. The Real Property and/or its improvements did not comply with the Ordinances;

    b. The Sellers did not properly construct and/or install sidewalks at the Real Property including, but not limited to, sidewalks from Fayette Farms to International Drive and all sidewalks in between;

    c. The Sellers did not properly construct and/or install sidewalks in accordance with the offsite sidewalk plan;

    d. The Sellers did not properly construct, repair, maintain, test, and/or inspect the stormwater retention ponds;

  e. The Sellers did not construct and maintain an access road to the stormwater ponds with a fifteen (15) foot or greater width;

  f. The Sellers failed to install a fence and gate around the stormwater detention ponds;

  g. The Sellers did not properly install landscaping on site including, but not limited to, vegetated buffers and berms;

  h. The Sellers did not properly install and/or construct sewer systems at the Real Property, failed to extend the water main, and failed to complete an as-built survey; and

  i. The Sellers failed to comply with and/or acquire the necessary government permits for the Real Property and its improvements including, but not limited to, those applicable building permits, certificates of occupancy, stormwater discharge, and any other permit that is or should have been listed in Schedule 3.09(b) of the Purchase Agreement.

### July 28, 2020 Decision of the Board of Supervisors

36. After the Buyers' acquisition of the Partnership, on June 23, 2020, a public hearing was held before the Board of Supervisors concerning an application for Revised Tentative Approval of a Planned Non-Residential Development on the Real Property (the "Amended Application").

37. On July 28, 2020, the Board of Supervisors rendered a decision (the "2020 Decision").

38. The 2020 Decision granted tentative approval to the Amended Application provided that the Buyers comply with 24 conditions set forth within the decision including that:

  a. The Buyers would submit to the Board of Supervisors an amended revised Tentative Planned Non-Residential Development Plan

     demonstrating conformity will all conditions contained in the 2020 Decision. (b)

b. The Buyers would obtain all required government approvals or permits. (e)

c. The Buyers receive approval of the final Stormwater Management Plans which conform to the town's requirements and are to the satisfaction of the town's engineer; any off-site improvements to the town's existing stormwater system, which were required to accommodate the plan were to be built to the town's specifications and inspected by its engineer. (f)

d. The Buyers produce, execute, and record a Stormwater Maintenance Agreement regarding the detention facility/facilities and any other private drainage improvements, providing for the perpetual maintenance of the Real Property. (g)

e. The Buyers shall own and maintain all common open spaces—except for those transferred to the town—and associated structures, grounds, fencing, facilities, and other amenities, including the existing detention pond(s) and any newly construction detention or stormwater management facilities. (h)

f. The Buyers must submit applications for final approval for all phases to the Board of Supervisors. (j)

g. The Buyers must provide for the perpetual operation and maintenance of all stormwater management facilities including stormwater ponds, outfall structures and open drainage swales; and in addition record a storm water management facility agreement providing for the perpetual operation and maintenance of such

     facilities; and pay the required Stormwater Facility Maintenance Fees as provided therein. (n)

  h. The Buyers must obtain all governmental permits prior to or as a condition of approval of any applications for any final approval of any phase of the tentatively approved Amended Application. (q)

  39. In order to comply with the 2010 Decision and the 2020 Decision and receive approval from the Board of Supervisors in order to develop the Real Property, the Buyers have had to make significant monetary expenditures.

  40. In order to comply with the 2010 Decision and the 2020 Decision, the Buyers were or will be forced to construct, modify, and/or repair deficiencies and noncomplying components of the Real Property and its improvements that were not completed by the Sellers and/or not disclosed to the Buyers.

  41. The Sellers' failure to construct and/or repair these deficiencies and noncompliance with permitting terms is the direct cause of the Buyers' damages.

  42. On or about December 20, 2021, counsel for the Buyers sent the Sellers a demand for indemnification ("Indemnification Demand"), in accordance with Article IX of the Purchase Agreement and the Indemnification Clause.

  43. In spite of the Sellers' obligation to comply the Indemnification Clause and demand for indemnification, the Sellers failed to respond, or otherwise refused to indemnify the Buyers.

CAUSE OF ACTION

<u>COUNT ONE</u> – Breach of Contract

  1-43. Paragraphs 1-43 are incorporated and realleged herein as paragraphs 1-41 of Count One.

  44. The Sellers breached the Purchase Agreement by making false or inaccurate representations and/or warranties regarding the Real Property including, but not limited to, those identified in Paragraphs 20-28 herein.

45. These breaches are a direct and proximate cause of damages to the Buyers.

46. The Buyers have incurred significant monetary damages in construction, repairs, permitting costs and fees, time delays, and maintenance to the Real Property.

47. The Buyers are entitled to contractual indemnification from the Sellers pursuant to Article IX and the Indemnification Clause of the Purchase Agreement.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs SL Imperial LP, LLC and SL Imperial GP, LLC respectfully request that judgment be entered in their favor against Ashford/Imperial Associates GP, LLC, Terrance J. Palmer, and James R. Johnson in an amount in excess of $75,000 and for:

1. Compensatory damages;
2. Interest;
3. Costs;
4. Attorneys' Fees;
5. Such other and further relief as the Court deems just and proper.

Dated: March 3, 2023

Respectfully submitted:

*/s/ Eric G. Soller*
PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI, LLP
Eric G. Soller, Esquire
PA ID No. 65560

egs@pietragallo.com
38th Floor, One Oxford Centre
Pittsburgh, PA 15219
412.263.2000

UPDIKE, KELLY & SPELLACY, P.C.
Kevin McEleney, Esquire (pro hac vice forthcoming)
kmceleney@uks.com
Goodwin Square
225 Asylum Street - 20th Floor
Hartford, CT 06103
860.548.2622

*Counsel for Plaintiffs SL Imperial LP, LLC and SL Imperial GP, LLC*