IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SL IMPERIAL LP, LLC, et al., </br></br>  Plaintiffs </br></br>  v. </br></br> ASHFORD/IMPERIAL ASSOCIATES GP, LLC, et al., </br></br>  Defendants. | Civil Action No. 2:23-cv-359 </br> Magistrate Judge Patricia L. Dodge |

# MEMORANDUM OPINION[1]

Plaintiffs SL Imperial, LP, LLC and SL Imperial GP, LLC (collectively "SL Imperial") have filed a Motion to Dismiss (ECF No. 10) the Counterclaim of Defendants Ashford/Imperial Associates GP, LLC, Terrance J. Palmer and James R. Johnson's (collectively "Defendants"). For the reasons that follow, the motion will be granted.

**I.     Relevant Procedural History**

SL Imperial commenced this breach of contract action on March 3, 2023 with the filing of a Complaint. (ECF No. 1.) After Defendants filed an Answer and Counterclaim for breach of contract against SL Imperial (ECF No. 8), SL Imperial moved to dismiss the Counterclaim under Fed. R. Civ. Pro. 12(b)(6). The motion to dismiss has been fully briefed. (ECF No. 11, 16.)

**II.    Relevant Factual Allegations**

**A.  Plaintiffs' Claim**

On October 16, 2019, SL Imperial entered into a Purchase Agreement with the Defendants

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case. Therefore, the undersigned has the authority to decide dispositive motions and enter final judgment.

to purchase all of Defendants' right, title and interest to their partnership interests in Ashford/Imperial Associates GP, LLC (the "Partnership"). (ECF No. 1, No. 1-2[2].) The Partnership owned real property in Allegheny County, Pennsylvania consisting of approximately 97 acres, together with nine buildings in the aggregate of 530,280 square feet and all buildings, structures, facilities, improvements and fixtures (the "Real Property").  (ECF No. 1 ¶7; ECF No. 1-2.)  Prior to the consummation of the purchase, Defendant Ashford/Imperial Associates, GP, LLC was the owner of the issued and outstanding general partnership interests in the Partnership. (*Id.* ¶ 11.) Defendants Palmer and Johnson together owned all of the issued and outstanding limited partnership interests in the Partnership. (*Id.* ¶ 12.)

Article III of the Purchase Agreement includes various representations and warranties made by Defendants. These include representations by Defendants that: the Partnership had no liabilities other than those listed; Defendants had not received any notice of any violations of any legal requirement affecting the Real Property, including any zoning or code violations; there were no unidentified agreements between Defendants and a third party that could give rise to claims affecting the Real Property; and Defendants were not aware of any pending government approvals, zoning or related matters that had been granted, denied or were pending.  (*Id.*  ¶¶ 20-27; ECF No. 8 Exhibit A.)  In addition, Defendants agreed to indemnify SL Imperial for any losses it incurred or sustained as a result of the inaccuracy or breach of any representation or warranty by Defendants.  (ECF No. 1, ¶ 28.)

The closing date of the transaction was December 23, 2019, after which SL Imperial acquired the Partnership interests along with the Real Property.  (*Id.* ¶ 19.)

---

[2] The Purchase Agreement was later amended on November 15, 2019.  ECF No 1-2 is a copy of the final Purchase Agreement between the parties.

According to the Complaint, SL Imperial subsequently discovered that in 2010, a representative of Defendants appeared before the Board of Supervisors of North Fayette Township ("Township") with an application for tentative approval of a development on the Real Property. (ECF No. 1 ¶29.) In a subsequent decision (the "2010 Decision"), the Township gave tentative approval subject to a number of conditions. (*Id.* ¶ 32.) According to SL Imperial, Defendants did not materially comply with these conditions, nor did they disclose the 2010 Decision to SL Imperial. (*Id.* ¶ 33, 35.)

In 2020, SL Imperial appeared before the Board of Supervisors with an amended development plan for the Real Property. (ECF 1 ¶36.) The Board of Supervisors granted tentative approval subject to a number of conditions (the "2020 Decision"). SL Imperial alleges that in order to comply with the conditions imposed in both the 2010 and 2020 Decisions, they have had to make significant expenditures. In addition, Defendants failed to repair deficiencies and non-complying elements that were not disclosed to SL Imperial. As a result, it claims it has sustained damages and Defendants have refused its demand for indemnification. (*Id.* ¶¶ 39-43.)

B. **Defendants' Counterclaim**

In their Counterclaim, Defendants allege that they disclosed the existence of the 2010 Decision to SL Imperial during the due diligence period, and moreover, the decision was a matter of public record. (ECF No. 8 ¶¶ 11, 12.) Thus, they claim, to the extent that SL Imperial did not identify the 2010 Decision, it was as a result of its own failure to meet its due diligence obligations. (*Id.* ¶ 13.)

Defendants assert that they have been damaged by SL Imperial's failure to identify the 2010 Decision by, among other things, incurring the expense of defending this lawsuit. (ECF No.

8 ¶ 15.) They claim that they are entitled to recover these expenses based on the language of Section 601(c) of the Purchase Agreement, which provides in relevant part that SL Imperial has an obligation to:

> indemnify, defend and hold Sellers harmless from and against any and all liabilities, losses, claims, demands, costs, expenses (including reasonable attorneys' fees and litigation costs) and judgments of any nature arising or alleged to arise from or in connection with any injury to, or death of, any person or loss or damage to property arising from or in connection with the Inspections. . .

Defendants note that the term "Inspections" is defined in the Purchase Agreement to include a "review of title, zoning, surveys, and building codes and other governmental requirements."

SL Imperial now moves to dismiss the Counterclaim based on its contention that Defendants are not entitled to indemnification for costs or expenses incurred as a result of this lawsuit.

### III.  Standard of Review

For the purposes of a 12(b)(6) motion to dismiss, claims made in a complaint or a counterclaim are treated equivalently and therefore the standards of review are interchangeable. As such, any reference to a claim made in a complaint within this standard of review section is equally applicable to claims made in a counterclaim. *See, e.g.*, *Universal Underwriters Co. v. J. Murray Motor Co., Inc.*, Civil Action No. 4:11-CV-1851, 2012 WL 12870228, at *1 n. 2 (M.D. Pa. Sept. 12, 2012). *See also, PPG Indus., Inc. v. Generon IGS, Inc.,* 760 F. Supp. 2d 520, 524 (W.D. Pa. 2011) ("Courts use the same standard in ruling on a motion to dismiss a counterclaim under Federal Rule of Civil Procedure 12(b)(6) as they do for a complaint."). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that

plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "This requires a plaintiff to plead "sufficient factual matter to show that the claim is facially plausible," thus enabling "the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). While the complaint "does not need detailed factual allegations ... a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

As noted by the Third Circuit in *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011), a 12(b)(6) inquiry includes identifying the elements of a claim, disregarding any allegations that are no more than conclusions and then reviewing the well-pleaded allegations of the complaint to evaluate whether the elements of the claim are sufficiently alleged. If a claim "is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (citation omitted).

In ruling on a Rule 12(b)(6) motion, courts generally consider only the complaint, and its exhibits and matters of public record. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

**IV.    Discussion**

SL Imperial seeks dismissal of Defendants' Counterclaim on the ground that the unambiguous terms of the Purchase Agreement do not permit Defendants to seek indemnification from SL Imperial for the costs and expenses they incur as a result of this lawsuit. While Defendants agree that the Purchase Agreement is unambiguous, they contend that pursuant to

6.01(c) of the Purchase Agreement, they are entitled to recover their "losses" as defined in the Agreement, and that includes their attorneys' fees in defending this lawsuit.

Under Pennsylvania law, to interpret a contract, a court must ascertain "the intent of the contracting parties, as objectively manifested by them." *See Hullett v. Towers, Perrin, Forster & Crosby, Inc.*, 38 F.3d 107,111 (3d Cir. 1994) (citing *Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.,* 619 F.2d 1001, 1009 (3d Cir. 1980). "If the parties 'intent can be cleanly extracted from the clear and unambiguous words that the parties have used, it is equally conventional wisdom that they are held to those words contained in the contract.'" *Allied Erecting & Dismantling Co. v. USX Corp.,* 249 F.3d 191, 201 (3d Cir. 2001) (quoting *Compass Tech. Inc. v. Tseng Labs., Inc.,* 71 F.3d 1125,1131 (3d Cir. 1995). "Pennsylvania courts apply the 'plain meaning rule' of interpretation of contracts which assumes that the intent of the parties to an instrument is 'embodied in the writing itself, and when the words are clear and unambiguous the intent is to be discovered only from the express language of the agreement.'" *Hullett*, 38 F.3d at 111.

To interpret a contract under Pennsylvania law, a court must make a preliminary inquiry into whether the contract is facially clear and unambiguous. *See Ready Food Prods., Inc. v. Great N. Ins. Co.,* 612 A.2d 1385, 1387 (Pa. Super. Ct. 1992) ("The threshold determination of whether a writing is 'ambiguous' necessarily lies with the court.'"). Where the terms of the contract are subject to only one reasonable interpretation, the court interprets the unambiguous contract as a matter of law. *Pacitti v. Macy's*, 193 F.3d 766, 773 (3d Cir. 1999). If, on the other hand, a contractual provision is found to be ambiguous in that it is susceptible to two reasonable interpretations, "the interpretation of the contract is left to the factfinder…to resolve the ambiguity in light of extrinsic evidence." *Hullett*, 38 F.3d at 111 (applying Pennsylvania law).

6

Here, both parties assert that the Purchase Agreement is unambiguous. *See* ECF No. 11 p. 5; and ECF No. 16 pp. 6-7. The Court agrees that it is unambiguous, and therefore, will proceed to interpret its meaning, as relevant here, as a matter of law.

Section 601 of the Purchase Agreement relates to the due diligence period to which the parties agreed prior to the closing of the transaction. Section 601(a) addresses the duration of the due diligence period and gives SL Imperial the right to:

> inspect, examine and test any and all aspects of the Real Property. . . including without limitation: review of title, zoning, surveys, and building codes and other governmental requirements; the physical, environmental and ecological condition of the Real Property, such aspects to include, without limitation, soil tests, borings, excavations, engineering studies. Phase I and Phase II studies, wetlands, rock testing, soil logs, percolation tests and other geological and environmental investigations, tests and inspections; and physical inspections of all structures located on the Real Property; discussions with the Tenants, and representatives of any governmental authorities regarding the Real Property (collectively, the "Inspections") . . .

(ECF No. 1-2, p. 27.)

Section 601(c) then addresses due diligence indemnification.[3] Of relevance here, SL Imperial agreed to indemnify Defendants for, among other things, losses and expenses, including reasonable attorneys' fees, "arising or alleged to arise from or in connection with any injury to, or death of, any person or loss or damage to property arising from or in connection with the Inspections . . ." during due diligence.

SL Imperial argues that the only reasonable interpretation of Section 601(c) is that its indemnification obligations are limited to injury or death to a person or loss or damage to property arising from the Inspections except to the extent such losses were caused by Defendants. Thus,

---

[3] While SL Imperial's Memorandum of Law references counsel's communications about the potential relevance of other indemnification provisions in the Purchase Agreement, this matter is not fully briefed and thus, the Court's analysis is limited to the interpretation of the parties' rights and duties regarding due diligence indemnification.

7

since Defendants' claim does not arise from personal injury or property damage, SL Imperial has no contractual obligation to indemnify them for their expenses in defending SL Imperial's breach of contract claim.  SL Imperial also notes that the "bulk" of the term "Inspections," which is defined in Section 601(c), relates to physical inspections of and entry onto the Real Property.

In turn, Defendants argue "[t]he express language of Section 6.01(c) of the Purchase Agreement broadly protects Defendants from 'any and all liabilities, losses…in connection with **<u>any injury</u>**…**<u>or loss</u>**…arising from or in connection with the Inspections…'" (ECF No. 16 p. 7.) (emphasis in original.) Thus, they argue, because the definition of the term "loss" in the Purchase Agreement includes "costs or expenses **of any kind**, including reasonable attorneys' fees and the cost of enforcing any right to indemnification," the relief requested in their Counterclaim is "contemplated by the Purchase Agreement…" (*Id.*) (emphasis in original).  In response to SL Imperial's contention that the injuries covered in the language of Section 6.01(c) are limited to personal injury and property damage, Defendants claim that "a plain reading of the contract makes it clear that these are *types* of harm that were contemplated rather than an exhaustive list." (*Id.*) (emphasis in original).

The Court concludes that there is only one reasonable interpretation of the Purchase Agreement as it relates to SL Imperial's due diligence indemnification obligations.  Section 6.01(a) permits SL Imperial to conduct "Inspections" during the due diligence period.  As defined, "Inspections" include physical entry onto the Real Property, inspection of various types of records, and communications with tenants and representatives of governmental authorities.  In turn, Section 601(c) obligates SL Imperial to indemnify Defendants from losses and expenses arising from or in connection with "any injury to, or death of, any person or loss or damage to property" arising

8

from or in connection with the Inspections. SL Imperial also agreed to repair any property damage it caused and to restore the Real Property to its pre-existing condition.

While the Inspections clearly encompass more than physical entry onto the Real Property, SL Imperial only agreed to indemnify Defendants for injuries to persons or "loss or damage to property" during the Inspections. While Defendants correctly note the "loss" is defined broadly in the Purchase Agreement, this does not impact the limitation on SL Imperial's indemnification duties as a result of its due diligence efforts. As clearly read, the word "loss" relates solely to loss of property, not to a loss sustained by Defendants because SL Imperial allegedly failed to perform adequate due diligence. Even assuming, as Defendants contend, that SL Imperial's alleged failure to identify the 2010 Decision was as a result of its failure to meet its due diligence obligations, the Purchase Agreement cannot be reasonably read to impose an indemnification obligation for its failure to do so.

Thus, the Court concludes as a matter of law that Section 601 is only subject to one reasonable interpretation and that Defendant's interpretation of their indemnification rights under Section 601 is not reasonable. As such, their Counterclaim is appropriately dismissed under Rule 12(b)(6). *See PPG Indus., Inc.,* 760 F. Supp. 2d at 524. Moreover, a curative amendment to the Counterclaim would be futile given the plain and unambiguous language of the Purchase Agreement. *See Shane v. Fauver,* 213 F.3d 113, 115 (3d Cir. 2000) ("'Futility' means that the complaint, as amended, would fail to state a claim upon which relief may be granted.") citing *Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1434 (3d Cir. 1997).

## V.     Conclusion

For these reasons, SL Imperial's Motion to Dismiss Defendants' Counterclaim will be granted.

An appropriate Order follows.

Dated: August 17, 2023                         BY THE COURT:

 

<u>/s/ Patricia L. Dodge</u>
PATRICIA L. DODGE
UNITED STATES MAGISTRATE JUDGE